UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO: 1:03CV-106-M

JAMES VINCE ARMSTRONG                                                                       PLAINTIFF

V.

CLINTON COUNTY JAIL; HON. SHELBY GENE
FERRILL, Individually and in his official capacity
as Clinton County Jailer; CLINTON COUNTY
FISCAL COURT; HON. DONNIE MCWHORTER,
in his official capacity as CLINTON COUNTY JUDGE;
HON. BILLY K. SMITH, in his official capacity as
CLINTON COUNTY MAGISTRATE; HON. PHILLIP
PARRIGAN, in his official capacity as CLINTON COUNTY
MAGISTRATE; HON. CHARLIE STEARNS, in his official
capacity as CLINTON COUNTY MAGISTRATE; HON. SAM
HADLEY, in his official capacity as CLINTON COUNTY
MAGISTRATE; HON. MICKEY RIDDLE, in his official
capacity as CLINTON COUNTY MAGISTRATE; and
HON. JERRY LOWHORN, in his official capacity as
CLINTON COUNTY MAGISTRATE                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DN 27] by Defendants, various entities of Clinton County. Fully briefed, this matter stands ripe for decision. For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

This action arises out of the events surrounding Plaintiff's incarceration in the Clinton County Jail beginning in late May of 2002. The Plaintiff, James Vince Armstrong ("Armstrong"), is a lifelong resident of Clinton County. As a result of what he views as violations of his constitutional rights, Plaintiff brings this action against various entities

associated with Clinton County (collectively "Defendants").

On or about May 30, 2002, police came to Plaintiff's home in response to a telephone call placed by Plaintiff's wife at the time wherein she accused Plaintiff of striking their child, an accusation Plaintiff denies. Plaintiff does admit to being in an agitated state when the police arrived, even to the point of striking one of the officers. The police subdued the Plaintiff with pepper spray, and as they were handcuffing him, they twisted his arm. Plaintiff contends that the twist caused his collarbone to pop, leading to the injury that is at the heart of this litigation. Plaintiff was then booked and lodged at the Clinton County Jail, where he remained an inmate until August of 2002.

That evening, Plaintiff purportedly told Deputy Sheriff Rick Riddle ("Riddle") and Jail staff member Johnny Thrasher ("Thrasher") that his shoulder was hurt or broken and requested to see a doctor. The next day, a Deputy Jailer took Plaintiff to the emergency room. He was x-rayed, told that his collarbone was broken, and to follow-up with another doctor in a couple of days. Plaintiff also testified that he thinks he went to the doctor a week or two later, but that he did not go to the doctor again until after he was released from the Jail. Shortly after his release, he underwent surgery for his injury. While in Jail, Plaintiff informed his mother and father of his injury and claims that his mother agreed to pay for treatment. He also claims that he told Jail employees, including Jailer Shelby Gene Ferrill ("Ferrill"), of his need for further treatment.

According to Ferrill, after Plaintiff's first visit to the doctor, he was given medication and his arm was placed in a sling, or brace. Plaintiff's mother, Helen Armstrong ("Ms.

Armstrong"), came to visit him shortly thereafter, and she testified that her son's collarbone was broken and hanging down. Ms. Armstrong was alarmed at her son's condition and took steps toward making another doctor's appointment for him. Ferrill acknowledges that Ms. Armstrong told him that Plaintiff needed to go see a doctor. Ferrill informed her that he could be taken to Dr. Powell, the doctor on staff at the Jail. Ms. Armstrong, however, preferred that her son see Dr. Cummings, their family physician, and she claims to have set up an appointment to that effect. Ferrill allegedly agreed to this arrangement but failed to bring the Plaintiff to his scheduled appointment. Plaintiff also testified to the fact that Ferrill had seen the severity of his injury. Ferrill denies both that an appointment with Dr. Cummings had been scheduled and that he had knowledge of the severity of the injury.

After he was released in August, Plaintiff saw Dr. Cummings who, in turn, referred him to Dr. Narasimha Reddy ("Dr. Reddy"). Dr. Reddy conducted an examination and concluded that Plaintiff was in significant pain. Dr. Reddy performed surgery on the Plaintiff on August 29, 2002. He also testified that though a brace works in most cases, and though ninety-five to ninety-six percent of clavicle fractures do not require surgery, those who experience fractures should see a physician every couple of weeks for a period of time following the initial fracture. Such visits ensure the injured party properly wears the brace. Plaintiff still suffers from pain, and Dr. Reddy testified that had Plaintiff been able to see a physician every couple of weeks after his injury, there was a "good chance" that his collarbone would have healed properly.

In light of these events, Plaintiff brings a claim against the named Defendants under

42 U.S.C. § 1983[1] for a violation of the Fourteenth Amendment. His claim is based on Defendants' alleged "willful, deliberate, and malicious failure to properly care for Plaintiff's medical injuries and condition."

### III. DISCUSSION

In their motion for summary judgment, the Defendants raise the issues of exhaustion of administrative remedies under the Prison Litigation Reform Act as well as qualified immunity. The Plaintiff's response contends that neither of these issues are sufficient to defeat his claim.[2] The Court will address each issue in turn.

**A. Prison Litigation Reform Act**

Defendants initially argue that Plaintiff's claim is barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because the Plaintiff failed to exhaust his administrative remedies. Plaintiff argues that Defendants prevented him from exhausting his administrative remedies, and thus the exhaustion requirement could not be met in this particular case.

Neither party addresses the fact that the Plaintiff filed his claim after his release from prison, which the Court finds to be determinative. The Court recently addressed the issue of the applicability of the PLRA in suits filed by former prisoners in the case of Sutton v.

---

[1] 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects or causes to be subjected, any citizen...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable..."

[2] The Plaintiff's response was filed late in this matter. Moreover, the Plaintiff did not file a motion requesting that the Court accept his late filing. Nevertheless, the Court will do so. In addition to filing a late response, the Plaintiff proffers no affidavits and makes only scant references to the record. The Court is not required to comb the record for evidence to support Plaintiff's claim. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

Hopkins County, No: 4:03CV-003-M, 2005 U.S. Dist. LEXIS 34698 (W.D. Ky. Dec. 19, 2005).  In Sutton, the Court joined the majority of courts which have found the PLRA to be inapplicable to those persons who file claims after their release from prison.  Id. at *10.  In so holding, the Court noted that the PLRA applies only to "prisoners," and that "[a]ll appellate courts which have considered the issue have held that the term 'prisoner' does not apply to those who have been released."  Id. at *8.  As the Plaintiff in this case is no longer a prisoner, any failure to exhaust administrative remedies is immaterial, and Plaintiff's claim is not barred by the PLRA.

**B. Section 1983 Claim and Qualified Immunity**

First, the majority of Plaintiff's claims are brought against various county officials in their official capacity.  Claims against a county official in his or her official capacity are interpreted as claims against the county itself. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Leach v. Shelby County Sheriff, 891 F.2d 1241, 1245-46 (6th Cir. 1989). Plaintiff has also sued the Clinton County Fiscal Court which the Court construes as a claim against the County.  When stating a claim against a municipality or a county, a plaintiff must also show that his injury was caused by an unconstitutional "policy" or "custom" of the municipality or county.  Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997).  In this case, the Plaintiff has made no such allegations nor has he set forth any evidence of an unconstitutional policy or custom on the part of Clinton County.  Therefore all official capacity claims against the Clinton County officials are dismissed as well as the claim against the Clinton County Fiscal Court.

As to the claims against the Clinton County Jail, it is not a "person" under § 1983. See Bradford v. Hammond, No. Civ.A.3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (concluding that municipal departments, such as jails, are not suable under § 1983). Therefore, the claim against the Clinton County Jail is dismissed.

The only remaining claim is an individual capacity claim against Jailer Ferrill. Ferrill argues that he did not violate Plaintiff's "clearly established" constitutional rights. The Plaintiff contends that summary judgment should be denied as he can show deliberate indifference.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001).

The state is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with "deliberate indifference to serious medical needs." Id. at 104. When prison officials act with deliberate indifference to the serious medical needs of prisoners so that they inflict unnecessary pain or suffering, their actions violate the Eighth Amendment. Id. at 104;

Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994). The Fourteenth Amendment's Due Process Clause grants pretrial detainees a right to adequate medical treatment--a right analogous to the Eighth Amendment rights of prisoners. Garretson v. City of Madison Heights, 407 F.3d 789, 795 (6th Cir. 2005).

As to whether Plaintiff's constitutional rights have been violated, the Court must consider whether he can make out a deliberate indifference claim. There are two parts to a deliberate indifference claim, one objective, one subjective. For the objective component, the detainee must demonstrate "the existence of a 'sufficiently serious' medical need." Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). For the subjective component, the detainee must demonstrate that the defendant possessed "a sufficiently culpable state of mind" in denying medical care. Brown v. Bargery, 207 F.3d 863, 867 (6th Cir.2000)).

"Where the seriousness of a prisoner's need for medical care is obvious even to a lay person," such obviousness is itself sufficient to satisfy the objective component of the adequate medical care test. Blackmore v. Kalamazoo County, 390 F.3d at 899. Moreover, a broken bone may suffice to state an objective claim. Harris v. Fairman, No. 94 C 3883, 1995 WL 151806, at *5 (N.D. Ill. Mar. 31, 1995).

When the Plaintiff was first jailed, his need for medical treatment was obvious and he received it. He was taken to the emergency room the next day where he was x-rayed and released back to jail. He was advised he had a fracture. The Plaintiff states that he was taken back to the emergency room by the Jailer a "week or two later," and he was given medication

and fitted with a sling. He claims the Jailer was present when the doctor told him that he needed to follow-up with his own doctor. The Jailer testified that after his first visit to the emergency room, the Plaintiff continued to complain about his shoulder and that he was taken back to the emergency room "a couple of days later." Although there is a disagreement about the timing, the undisputed fact is that within two weeks of his incarceration, Plaintiff was taken twice to the emergency room, was given medication, and was fitted with a figure eight splint.

The question in this case is whether Plaintiff's need for medical treatment after those two visits was obvious. It was obvious that he had broken a bone, but further treatment in addition to the two emergency room visits, after he had received medication and been fitted with a brace, may not have been obvious to a lay person. However, Plaintiff has submitted verifying medical evidence of the need for follow up treatment under these circumstances and thus, he satisfies the objective requirement. See Napier v. Madison County, 238 F.3d 739 (6th Cir. 2001).

The Court now turns to whether Plaintiff can satisfy the subjective prong. This requires an inquiry into what it means to be "deliberately indifferent." "Deliberate indifference" describes a state of mind more blameworthy than negligence; it requires the showing of a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. It is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Garretson, 407 F.3d at 795.

The standard for establishing deliberate indifference is high:

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to Watkins's health and safety. Farmer v. Brennan, 511 U.S. 825, 835-37, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments. Id. at 837-38.

Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001).

Moreover, "[i]t is not enough merely to find that a reasonable person would have known, or that the defendant should have known" of the serious risk to plaintiff's health. Farmer, 511 U.S. at 843. Deliberate indifference means the knowing failure to act when made aware of an "excessive risk to the inmate's health." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)

Here, Plaintiff cannot satisfy the subjective prong. Plaintiff received medical treatment on two separate occasions shortly after his incarceration. The medical evidence from Dr. Reddy is that normally, the brace/splint/sling application is sufficient to take care of most people who have a fractured clavicle. The Plaintiff received that treatment. At most, drawing all inferences in favor of the Plaintiff, he can only show that Ferrill knew of the emergency room physician's instruction to Plaintiff to follow up with his doctor.[3] Plaintiff has not shown that Ferrill knew of and disregarded an excessive risk to Plaintiff's health. There is nothing in the record to suggest that Ferrill knew that if Plaintiff was not allowed follow up medical treatment that he might suffer serious harm to his health and safety. Thus,

---

[3] Ferrill has no obligation to allow Plaintiff to see his personal physician. His only obligation is to provide adequate medical treatment for his inmates.

-10-

Plaintiff cannot show that Ferrill acted with a culpable state of mind.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DN 27] is **GRANTED** and Plaintiff's § 1983 claim is dismissed.[4]

cc: counsel of record
03cv-106Armstrong1

---

[4]Having dismissed the Plaintiff's federal claim, the Court declines to exercise supplement jurisdiction over the Plaintiff's state law claims.